## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

LORI QUICK BEAR,

      Plaintiff,

vs.                                  CASE NO. 3:10-cv-448-J-34TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

      This matter is before the Court on Plaintiff's complaint (Doc. #1), which seeks review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") disability payments.  Plaintiff filed her Memorandum in Support of the Appeal of the Commissioner's Decision (Doc. #15), and Defendant filed his Memorandum in Support of the Commissioner's Decision (Doc. #16).  The Commissioner has filed the transcript of the underlying administrative record and proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

      The undersigned has reviewed the record and has given it due consideration in its entirety, including arguments presented by the parties in their briefs and materials provided in the transcript of the underlying proceedings.  For the reasons set out herein, the undersigned recommends the Commissioner's decision be **AFFIRMED**.

---

[1]Any party may file and serve specific, written objections hereto within fourteen (14) days after service of this Report and Recommendation.  Failure to file a timely objection waives a party's right to a *de novo* review.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Local Rule 6.02(a), United States District Court for the Middle District of Florida.

## I.  Procedural History

Plaintiff filed a claim for DIB and SSI benefits on August 8, 2006, alleging disability as of May 10, 2004 (Tr. 140-48).  Plaintiff's claim was denied through two administrative review stages (Tr. 86-91, 96-100) and on January 7, 2009, a hearing was held before Administrative Law Judge Stephen C. Calvarese ("the ALJ") (Tr. 29-77).  At the hearing, Plaintiff appeared and testified, as did vocational expert Randy Salmons ("the VE") (Tr. 29-77).  Plaintiff was represented by legal counsel at the administrative hearing (*see* Tr. 29-77).  The ALJ found that Plaintiff was not disabled in a decision dated June 1, 2009 (Tr. 11-28).  The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (Tr. 1-4).  Having exhausted her administrative remedies, Plaintiff's current counsel of record, Mr. Richard L. Culbertson, timely filed the instant action in federal court on May 24, 2010 (Doc. #1).

## II.  Standard of Review

A plaintiff may be entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).

For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.  *See* 20

C.F.R. §§ 404.1520(a)(4)(i-v); 416.920(a)(4)(i-v);[2] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

---

[2] All references made to 20 C.F.R. will be to the 2010 edition unless otherwise specified. As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. that pertain to part 404 and disability insurance benefits.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human S*ervs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments.  *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations.  20 C.F.R. §§ 404.1512(c); 416.912(c).

### III.  Background Facts

Plaintiff was born on January 13, 1969; thus, at the time of the 2009 hearing, she was thirty-nine years old (*see* Tr. 29, 140).  Plaintiff completed schooling through eighth grade and then obtained a GED (Tr. 38).  Plaintiff has past relevant work experience as a dog trainer, bartender, waitress/server, construction worker, and house cleaner (Tr. 39-40).

4

*See, e.g.,* United States Dep't of Labor, *Dictionary of Occupational Titles* §§ 159.224-010 (Animal Trainer), 311.477-030 (Waitress), 312.474-010 (Bartender), 869.687-026 (Construction Worker II), 301.687-018 (Domestic Service) (4th ed. 1991).

The evidence of record shows earnings of $2,638.03 in 2005; $6,827.66 in 2006; and $320.00 in 2007 (Tr. 16).  At the hearing, Plaintiff testified that she worked as a bartender/server from 2000 until early 2007 when she finally "couldn't do it anymore" (Tr. 39).  Plaintiff stated that in 2004-05 she did construction, finishing drywall, for twelve to eighteen months (Tr. 40).  Plaintiff testified she was currently working part-time cleaning homes, which she had been doing since August 2007 (Tr. 40).  Plaintiff asserted she cleaned four homes, taking a lot of hours each week to do so because she had to take her time and she was allowed to work at her own pace (Tr. 40).  Plaintiff claimed she made approximately $800 per month cleaning houses (Tr. 41).  The ALJ found that this work activity did not rise to the substantial gainful activity level (Tr. 16-17).

Plaintiff alleges disability beginning May 10, 2004, due to chronic headaches, osteophyte complex C5-C6, C1 herniated disc, depression, and numbness in the extremities (Tr. 165, 205).  Additionally, at the hearing, Plaintiff claimed disability due neck and back pain, headaches, numbness of the extremities, and depression (Tr. 42-63).

The ALJ found Plaintiff had the following severe impairments: post traumatic cephalgia, cervical trauma with pain, lumbar degenerative disc disease with low back pain, history of depression, and migraines (Tr. 17).  After considering the evidence of record and the testimony obtained at the hearing, the ALJ determined Plaintiff retained the residual

functional capacity ("RFC") to perform light work (Tr. 23).[3]   The ALJ excepted work requiring crawling and climbing ladders, ropes, or scaffolds (Tr. 23).  The ALJ found Plaintiff could occasionally balance, stoop, kneel, and crouch, climb ramps and stairs, reach overhead with her right upper extremity, and should avoid concentrated exposure to extreme cold and hazards (*i.e.*, heights, machinery) (Tr. 23).  The ALJ found Plaintiff had only moderate limitations in her ability to understand, remember, and carry out detailed instructions; work in coordination with or proximity to others without being distracted by them; accept instructions and respond appropriately to criticism from superiors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 23).  The ALJ determined Plaintiff retained adequate mental ability to carry out simple instructions and relate "minimally adequately" to others in a routine work setting (Tr. 23).[4]

When considering Plaintiff's impairments at step three of the sequential evaluation process, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404 Subpt. P. (Tr. 22).  At step four, after accepting the VE's testimony, the ALJ found Plaintiff capable of performing past relevant work as a bartender and server/waiter (Tr. 27). *See Dictionary of Occupational Titles, supra*, §§ 311.477-030, 312.474-010.

---

[3] Light work requires the ability to lift and carry twenty (20) pounds occasionally and up to ten (10) pounds frequently, sitting up to six (6) hours of an eight-hour workday, and standing/walking six (6) or more hours in an eight-hour workday.  20 C.F.R.§§ 404.1567(b) and 416.967(b); *see also* SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Nov. 30, 1982).

[4] In the hypothetical question posed to the VE, the ALJ stated the same limitations (Tr. 66-67).

6

In the Disability Report-Adult, dated August 8, 2006, Plaintiff claimed she was incapable of working as she was unable to grip objects due to numbness in the upper extremities, ride in a vehicle or stand for long periods due to pain, and unable to concentrate due to depression (Tr. 165). In the Disability Report-Appeal, dated March 20, 2007, Plaintiff claimed to have experienced changes in her condition (Tr. 205). Specifically, Plaintiff noted the numbness in her extremities, pain, and depression had all increased in severity and she suffered from "dizzy spells" (Tr. 205).

The MRI performed March 1, 2004 of Plaintiff's lumbar spine was normal, and the MRI of her cervical spine that same date revealed left eccentric osteophyte disc complex formation at C5-6 with no direct impingement on the cord, but moderate encroachment on the left lateral recess (Tr. 347-48). Plaintiff saw Alyn Benezette, D.O. ("Dr. Benezette") on May 20, 2004, on referral by Kenneth B. Hawthorne, Jr., M.D. ("Dr. Hawthorne"), for evaluation and treatment of two separate motor vehicle accidents–the first on January 12, 2004, and the second on February 8, 2004 (Tr. 279). Examination revealed moderate restriction of the cervical spine to motion in all planes by fifty percent (Tr. 281). Dr. Benezette's assessment was cervical radiculopathy/spondylosis/myostitis; thoracic/lumbar myostitis; and post traumatic headaches (Tr. 281).

Plaintiff continued treatment with Dr. Benzette until October 23, 2006 (Tr. 231-85, 339-43, 352-58). Plaintiff's complaints and Dr. Benzette's findings remained substantially consistent throughout the course of treatment (*see* Tr. 231-85, 339-43, 352-58). Dr. Benezette consistently prescribed Plaintiff medication including, *inter alia*, Lortab, Trazodone, and Soma, which Plaintiff refilled regularly (Tr. 246, 252, 255, 259, 261, 263,

272, 353, 357).  Dr. Benezette maintained Plaintiff would require long term use of such medications to maintain basic analgesia, control spasms, and sleep (Tr. 259).

Plaintiff saw Dr. Hawthorne on June 3, 2004, for follow-up of the chronic headaches and neck and back injuries (Tr. 344).  Dr. Hawthorne noted Plaintiff continued to work despite the pain (Tr. 344).  Dr. Hawthorne's diagnosis was consistent with Dr. Benezette's (Tr. 344).  Dr. Hawthorne additionally noted the negative MRI scan of the lumbar spine, and MRI scan of the cervical spine consistent with osteophyte disc complex at C5-6 with mild narrowing of the neural foramen at the C5-6 level (Tr. 344).  Dr. Hawthorne opined that Plaintiff should avoid heavy lifting, repetitive use of her upper extremities, and repetitive bending, or squatting (Tr. 344-45).

An EMG/Nerve Conduction study performed on June 4, 2004, revealed radiculopathy of the right upper extremity with chronic denervation changes in the C5, C6, and C7 nerve roots; mild sensory median neuropathy of the right upper extremity; and mild distal ulnar and radial sensory neuropathy in the right upper extremity (Tr. 274).

On June 18, 2004, Plaintiff presented to the emergency room at Halifax Medical Center ("Halifax ER") complaining of toothache and right jaw pain with nausea and vomiting (Tr. 402).  Omar J. Adams, M.D. ("Dr. Adams"), noted full range of motion in the neck and no focal, motor, or sensory deficits in any of the extremities (Tr. 403).

On August 9, 2004, Dr. Benezette stated Plaintiff should ideally be working in a more sedentary capacity (Plaintiff reported she was still working in food service) (Tr. 261-62).  During follow-up on September 21, 2004, Dr. Benezette noted that Plaintiff was still working doing painting and drywall (Tr. 260).  Dr. Benezette recommended that Plaintiff not do any

heavy lifting, carrying, repetitive reaching, pushing, pulling, stooping, squatting, or bending and reduce her work load to less than twenty hours a week (Tr. 261).

On November 3, 2004, Dr. Benezette found that Plaintiff had reached maximum medical improvement (MMI) with a seven percent permanent impairment of the whole body (Tr. 259).  Dr. Benezette stated Plaintiff was restricted to light activities and should refrain from repetitive and prolonged reaching, pushing, pulling, stooping, squatting, bending, heavy lifting, or carrying (Tr. 259).

Plaintiff presented to the Halifax ER on September 30, 2005, with complaints of urinary frequency, urgency, and fever (Tr. 395).  Tara D. Wilson, M.D. ("Dr. Wilson") diagnosed Plaintiff with pyelonephritis with urinary tract infection (Tr. 396).  Dr. Wilson noted Plaintiff denied headache, neck and joint pain, or paresthesias (Tr. 395).  Dr. Wilson also noted Plaintiff's report of past intravenous ("IV") drug use, claiming to have quit four months prior (Tr. 395).

On October 19, 2005, Plaintiff underwent an evaluation by Christine Herman, ACSW, LCSW, LLC ("Ms. Herman"), on self referral for depression and anxiety (Tr. 317). Plaintiff claimed she did not use alcohol but "smoked pot daily and binged on cocaine on the weekends" (Tr. 317).[5]  Plaintiff stated she began using drugs at age thirteen and has consistently used them ever since, with the exception of her jail time in 1993-98 (Tr. 317).

---

[5] At the hearing Plaintiff maintained Ms. Herman's report of Plaintiff's drug use history was misunderstood, claiming she has not used cocaine or "meth" since going to prison in 1993 on a "Possession of meth" charge and currently only uses  marijuana a few times a month, not daily (Tr. 51-52).

Ms. Herman diagnosed the claimant with depressive disorder, NOS;[6] cocaine dependence with physiological dependence; and a GAF score of 41 (Tr. 318).[7]

On April 9, 2006, Plaintiff was involved in a third motor vehicle accident (Tr. 244). X-rays taken at Florida Hospital Ormond Memorial showed cervical degenerative disc disease and lumbar sacralization of L5, neither with acute pathology (Tr. 229-30, 244).

During a follow-up on June 20, 2006, Dr. Benezette restricted Plaintiff to sedentary activities pending follow-up in three weeks (Tr. 242). After Plaintiff's admission of continued marijuana use for her headaches, Dr. Benezette also encouraged Plaintiff to stop using marijuana and ordered her to undergo a drug screen (Tr. 242).[8] On July 18, 2006, Dr. Benezette further restricted Plaintiff to "very sedentary" work (Tr. 239).

During follow-up on August 17, 2006, at Dr. Benezette's office, Matthew J. Morrison, PA-C ("Mr. Morrison"), reviewed the lumbar and cervical MRIs performed July 21, 2006,

---

[6] The Depressive Disorder Not Otherwise Specified (NOS) category includes disorders with depressive features that do not meet the criteria for Major Depressive, Dysthymic, or Adjustment disorders. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 381 (4th ed., American Psychiatric Assoc. 2000)

[7] The Global Assessment of Functioning scale ("GAF") was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100. A GAF score of 31-40 indicates "some impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning." A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

[8] Plaintiff was originally ordered to undergo a urine toxicology screening in November 2005 (Tr. 252). Then, in April 2006, Dr. Benezette's physician assistant Judy Gentile, PA-C, again instructed Plaintiff to complete a urine drug screen because she had failed to comply with the November 2005 order (Tr. 246).

with Plaintiff, noting no significant change in the results from previous MRIs (Tr. 232).  Mr. Morrison also noted Plaintiff's continued use of marijuana, which she was instructed to discontinue (Tr. 231).  During the September 22, 2006, follow-up, Dr. Benezette opined that Plaintiff was unable to work pending follow-up in one month (Tr. 357).

On October 11, 2006, non-examining physician John E. Long, M.D. ("Dr. Long"), performed a Physical Residual Functional Capacity Assessment (Tr. 286-93).   After reviewing Plaintiff's medical records, Dr. Long found Plaintiff had the ability to stand, walk, and/or sit for six hours in an eight-hour workday and an unlimited ability to push and pull (including the operation of hand and/or foot controls) (Tr. 287).  Additionally, Dr. Long found Plaintiff capable of lifting and/or carrying up to twenty pounds occasionally and ten pounds frequently (Tr. 287).  Dr. Long opined Plaintiff should never crawl or climb ladders, ropes, or scaffolds; should avoid concentrated exposure to extreme cold and hazards (*i.e.*, machinery); and had limited ability to reach overhead (Tr. 288-290).

On October 17, 2006, Plaintiff underwent a consultative evaluation by Jeff Oatley, Ph.D. ("Dr. Oatley"), at the request of the Social Security Administration (Tr. 294).  Plaintiff stated she had not received any inpatient counseling from any mental health professional; however, she reported some outpatient counseling after her father died when she was twelve years old (Tr. 294).  Plaintiff stated she had received psychopharmacological treatment from Dr. Benezette's office (a prescription for an antidepressant) (Tr. 294).  Plaintiff reported that she lived alone, prepared meals, was self-sufficient in bathing and dressing, and could do all household chores including laundry (Tr. 296).  Dr. Oatley's diagnosis was back problems as specified by a physician assistant and Antisocial

Personality Disorder as indicated by failure to conform to social norms, deceitfulness, irritability, and consistent irresponsibility (Tr. 296).

On November 28, 2006, Alejandro Vergara, M.D. ("Dr. Vergara"), completed a Psychiatric Review Technique Form ("PRTF") (Tr. 298-311). In the evaluation, Dr. Vergara opined Plaintiff had impairments but they were not severe, finding Plaintiff's degree of limitation was only mild in maintaining social functioning with no other limitations (Tr. 308-10). Dr. Vergara concurred with Dr. Oatley's diagnosis of Antisocial Personality Disorder (Tr. 310).

Plaintiff saw Ms. Herman again on January 10, 2007, after the recent deaths of her aunt and grandmother (Tr. 315). In addition to her prior complaints in October, 2005, Plaintiff reported she was no longer "shooting up" cocaine but she still used marijuana daily (Tr. 315). Plaintiff stated that her tolerance for marijuana had become quite high and she required a significant dose in order to feel high (Tr. 315). Ms. Herman diagnosed Plaintiff with cannabis dependence with physiological dependence; depressive disorder, NOS; and a GAF of 39 (Tr. 316).

On May 7, 2007, Plaintiff underwent another psychological evaluation with Michael Zelenka, Ph.D. ("Dr. Zelenka") (Tr. 321-34). Dr. Zelenka found Plaintiff's degree of limitation to be mild to moderate (Tr. 331). Dr. Zelenka diagnosed Plaintiff with Personality Disorder; Depressive Disorder, NOS; and substance addiction (Tr. 324, 328-29). Dr. Zelenka completed a Mental RFC Assessment, concluding that if Plaintiff were "given allowances in areas indicated [in the assessment], [Plaintiff] retain[ed] adequate mental ability to carry out simple instructions and relate minimally adequately to others in a routine work setting" (Tr. 337).

12

Plaintiff presented to the Halifax ER on August 16, 2008, complaining of a headache and neck pain (Tr. 381).   The examination was essentially normal except for some tenderness in the neck (Tr. 382).   Robert D. Mathis, M.D. ("Dr. Mathis") diagnosed Plaintiff with a migraine and cervical strain (Tr. 383).   Additionally, Dr. Mathis found Plaintiff had a full range of motion in her extremities (Tr. 382).

As discussed at the hearing, Plaintiff underwent a post-hearing consultive examination on March 25, 2009, with Alvan Barber, M.D. ("Dr. Barber"), at the request of the Social Security Administration (Tr. 74-75, 405).   Plaintiff told Dr. Barber she was unable to work due to constant pain but was not currently taking any medication and she worked part-time as a home cleaner (Tr. 405).   Plaintiff maintained she could walk, stand, or sit for ten to twenty minutes and lift ten pounds (Tr. 406).   Barber's diagnosed Plaintiff with cervical trauma with pain consistent with a motor vehicle accident; lumbar degenerative disc disease with low back pain; history of depression, not on medication; headache disorder, not on medication; and tobacco abuse (Tr. 409).

Dr. Barber completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) (Tr. 412).   Dr. Barber opined that Plaintiff could lift/carry eleven to fifty pounds occasionally and up to ten pounds frequently; sit, stand, and walk six hours in an eight-hour workday; frequently reach, handle, feel, push/pull, and occasionally finger with her right upper extremity; and frequently reach and continuously handle, feel, push and pull with her left upper extremity (Tr. 412-14).   Dr. Barber asserted Plaintiff could frequently operate foot controls and climb stairs and ramps; occasionally balance, stoop, kneel, crouch, and crawl; never climb ladders or scaffolds; frequently be exposed to moving

mechanical parts and operate a motor vehicle; occasionally be exposed to vibrations; and never be exposed to unprotected heights or extreme cold or heat (Tr. 414-16).

At the January 7, 2009, hearing, Plaintiff testified she had worked as a dog trainer, bartender, waitress/server, construction worker and house cleaner (Tr. 39-40).   Plaintiff claimed she has neck and back pain radiating into her extremities and suffers from severe migraines (Tr. 42).   Plaintiff stated she was not currently being seen by any doctor or taking any medication (Tr. 45).   Plaintiff testified the pain prevents her from lifting more than three pounds, standing or sitting for more than ten  or twenty minutes, walking straight or further than 100 feet without rest, and sleeping (Tr. 47, 54).   Plaintiff stated she sometimes drives 150 to 200 miles in a day and asserted she has not used cocaine since going to jail in 1993. but continues to use marijuana occasionally to treat her symptoms (Tr. 50-52, 59).

Following Plaintiff's testimony, the ALJ asked the VE what types of jobs Plaintiff could perform if she were limited to light work with limitations, including: (1) occasionally lift twenty pounds and frequently lift ten; (2) stand, sit, and walk six hours in an eight-hour work day; (3) never climb ladders, ropes, or scaffolds; (4) occasionally do other postural activities except no crawling; (5) occasionally balance, stoop, kneel, crouch, and climb ramps and stairs; (6) reach only occasionally overhead with right extremity; (7) avoid concentrated exposure to extreme cold and also hazards including machinery and heights; (8) moderate restrictions in ability to work in coordination with or proximity to others without being distracted by them, accept instruction and respond appropriately to criticism from supervisors, and get along with coworkers without distracting them; and (9) could be argumentative and irritable, interfering with relationships at times, but given allowances the person retains adequate mental ability to carry out simple instructions and relates minimally

14

adequately to others in a routine work setting (Tr. 66-67). Using said limitations, the VE testified that Plaintiff could perform her past relevant work as a bartender and server/waiter (Tr. 68). *See Dictionary of Occupational Titles*, *supra*, §§ 311.477-030, 312.474-010.

In a second hypothetical, the ALJ incorporated Plaintiff's subjective complaints and limitations to which the VE testified, "The hypothetical is too is too restricted for me to identify any jobs [in the regional or national economy]" (Tr. 68-69). The final hypothetical posed by the ALJ assumed a person restricted to sedentary or "very sedentary" physical restrictions (incorporating Dr. Benezette's restrictions of record) and included the previous mental limitations (Tr. 71). The VE testified that although such jobs as bartender and server/waiter would be eliminated, other jobs in the national and regional economy existed including "assembly positions that are sedentary in nature and are unskilled" (Tr. 70-71). *See Dictionary of Occupational Titles*, *supra*, §§ 739.687-182, 731-687-010.

Based on the record evidence and the testimony obtained at the hearing, the ALJ found Plaintiff was not disabled in a decision dated June 1, 2009 (Tr. 28).

## IV. Analysis

### A. Proper Consideration of Opinion Evidence

Plaintiff argues that the ALJ failed to apply the correct legal standards to the opinion evidence of Dr. Benezette (Doc. #15 at 10). The RFC is an assessment based on all relevant evidence of a plaintiff's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.1545; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the physicians' evaluations of a plaintiff's condition and the medical consequences thereof. *Id.* In evaluating a plaintiff's RFC, the ALJ must consider

all of a plaintiff's impairments, including subjective symptoms such as pain.  20 C.F.R. §
404.1529.

In determining a plaintiff's RFC, the opinion, diagnosis, and medical evidence of a
treating physician are entitled to more weight than the opinion of a non-examining source.
20 C.F.R. § 404.1527(d)(2).  The Regulations further instruct ALJs with respect to properly
weighing the medical opinions of treating physicians.  The Regulations provide, in pertinent
part, as follows:

> Generally, we give more weight to opinions from [a plaintiff's] treating
> sources, since these sources are likely to be the medical professionals most
> able to provide a detailed, longitudinal picture of [a plaintiff's] medical
> impairment(s) and may bring a unique perspective to the medical evidence
> that cannot be obtained from the objective medical findings alone or from
> reports of individual examinations, such as consultative examinations or brief
> hospitalizations.

20 C.F.R. § 404.1527(d)(2).

Because treating physicians "are likely to be the medical professionals most able to
provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s)," a treating
physician's medical opinion is due to be afforded great weight so long as it is well
supported by medically acceptable clinical and laboratory diagnostic techniques and is not
inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2).
Important to the determination of whether there is a "detailed, longitudinal picture" of a
claimant's impairments is the length of the treatment relationship,[9] the frequency of
examination, the knowledge of the treating source as shown by the nature and extent of

---

[9]Generally, the longer a treating source has treated a claimant and the more times a
claimant has been seen by a treating source, the more weight that should be given to that
source's medical opinion.  20 C.F.R. § 404.1527(d)(2)(i).

the treatment relationship, the evidence and explanation presented by the treating source to support his or her opinion, the consistency of the opinion with the record as a whole, and the specialization of the physician.  20 C.F.R. § 404.1527(d)(2)-(5).

Additionally, it is well established in the Eleventh Circuit that, generally, substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is "good cause" to do otherwise.  *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583.  The Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion: (1) is not bolstered by the evidence; (2) is contrary to the evidence; or (3) is inconsistent with the treating physician's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  *Lewis*, 125 F.3d at 1440.  "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court cannot "disturb the ALJ's refusal to give the opinion controlling weight."  *Carson v. Comm'r of Soc. Sec.*, 300 F. App'x 741, 743 (11th Cir. 2008).[10]  In certain circumstances, however, the ALJ's failure to strictly comply with this requirement may be deemed harmless error.  *See Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) ("An ALJ's failure to state with particularity the weight given different medical opinions is reversible error.  When, however, an incorrect

---

[10]Unpublished opinions may be cited throughout this order as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

17

application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citations omitted).

Here, the ALJ notes nearly every examination conducted by Dr. Benezette (Tr. 17-20). The ALJ recognizes Dr. Benezette's restriction of Plaintiff's activities at various times, specifically noting the lack of limitations at the last appointment on October 23, 2006 (Tr. 26; *see also* Tr. 352).[11] The ALJ highlights this last appointment was conducted only six months following the last accident, not a continuous period of twelve months as required, and there is no medical evidence on file from any treating physician since that final examination in October 2006 (Tr. 26-27). The ALJ accepted Dr. Benezette's opinions that Plaintiff could perform light work activities in September 2004, November 2004 and November 2005, as they were consistent with the evidence of record (Tr. 27; *see also* Tr. 252, 254, 257). The ALJ considered and implicitly accepted Dr. Benezette's opinions that Plaintiff should abstain from heavy lifting in April 2006, and was restricted to sedentary activities in June and July 2006; and was unable to work for one month in September 2006 (Tr. 26, 27; *see also* Tr. 238-46, 356-57). Also considered were Dr. Benezette's reports along with evidence of record regarding Plaintiff's work activities in 2004, 2005, 2006, and 2007, despite her impairments/symptoms (Tr. 25, 27). The ALJ also considered the opinions of Dr. Hawthorne and gave his opinion appropriate weight as a treating physician,

---

[11]The Court finds the lack of work or activity restrictions upon Plaintiff seems significant in this instance, given that Dr. Benezette had previously placed restrictions on Plaintiff a number of times (*see, e.g.,* Tr. 239, 242, 246, 252, 255, 257, 259, 261, 263, 266, 270, 272). Furthermore, Dr. Benezette did not place restrictions on Plaintiff during this October  2006 visit, despite Plaintiff's complaints that she had difficulty walking, standing, sitting, and driving for more than twenty (20) minutes at a time (Tr. 352).

specifically noting Dr. Hawthorne's opinion was supported by objective medical evidence (Tr. 27).

The ALJ stated he afforded "appropriate weight" to Dr. Benezette's opinion evidence, as well as the opinion evidence of Dr. Hawthorne, Dr. Barber, and the physicians employed by the State Disability Determination Services (Tr. 26-27).  In making his determination of the weight to give the opinion evidence of record, ALJ Calvarese explicitly set forth the correct standard for weighing opinion evidence.  The ALJ noted,

> the record contains an opinion from an examining physician, which supports the RFC reached in this decision.  Furthermore, the residual functional capacity conclusions reached by the physicians employed the State Disability Determination Services also support a finding of 'not disabled.'  Although those physicians were non-examining, *and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians*, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (emphasis added).

(Tr. 26.)  See 20 C.F.R. § 404.1527.  There is no indication in the decision that the ALJ attempted to discount Dr. Benezette's opinion evidence, as Plaintiff suggests.  Instead, the ALJ weighed all the evidence of record, including the opinion evidence, which he specifically noted in his decision, and came to the conclusion Plaintiff was not disabled as that term is defined by the Social Security Act.  Dr. Benezette's opinion of Plaintiff's restriction from activities evolved throughout the course of his treatment of Plaintiff (Tr. 231-82, 352-58).  The ALJ noted and accepted those changes in his consideration of Plaintiff's claimed disability (*see* Tr. 17-21, 23-27).

Based on the foregoing, the undersigned finds the reasons cited by the ALJ for according "appropriate weight" to Dr. Benezette's opinions are supported by substantial

evidence of record and failure to state with greater specificity the amount of weight afforded to be harmless error.  *See Caldwell*, 261 F. App'x at 190.

**B.     Plaintiff's Credibility Finding**

Plaintiff also argues that the ALJ improperly evaluated her credibility regarding her testimony as to the intensity, persistence, and limiting effects of his symptoms (Doc. #15 at 12).  An ALJ must consider all of a plaintiff's statements about his or her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1520.  In so doing, the ALJ must apply the Eleventh Circuit's three-part pain standard, which requires: (1) evidence of an underlying medical condition; and either (2) objective medical evidence substantiating the severity of the pain asserted; or (3) the objective medical condition is so severe that it can be reasonably expected to give rise to the pain asserted.  *Foote*, 67 F.3d at 1560.

Where an ALJ decides not to credit a plaintiff's testimony about an asserted condition, the ALJ must articulate specific and adequate reasons based on substantial evidence for so doing, or the record must be obvious as to the credibility finding.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).  The Eleventh Circuit has noted that the ALJ has at his disposal many reasons for finding a claimant's testimony not credible, including daily activities.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (noting activities such as caring for personal needs, visiting a sick aunt, helping his spouse around the house, and carrying out the garbage supported the ALJ's finding that the claimant did not suffer disabling pain).

Here, Plaintiff testified that she experiences pain in her neck and back, radiating into her extremities which, in combination with depression and chronic migraines, prevents her from working (Tr. 165).  The ALJ found Plaintiff's statements were not fully credible, with the finding that her statements "concerning the intensity, persistence and limiting effect of [her] symptoms are not credible to the extent they are inconsistent with the ... residual functional capacity assessment" (Tr. 25).  Thus, the ALJ did not totally reject Plaintiff's pain testimony.  He accepted it as true to the extent it was consistent with the RFC finding Plaintiff could perform light work with some additional restrictions (*see* Tr. 23-25).

The ALJ discredited Plaintiff's testimony by noting, *inter alia*, her statements regarding her daily activities (Tr. 25) and inconsistencies between Plaintiff's testimony and evidence in the record (Tr. 26).  The ALJ specifically states, "Although [the work activity in 2005-07] did not constitute gainful activity, it does indicate that [Plaintiff's] daily activities have, at least at times, been somewhat greater than [she] has generally reported" (Tr. 25).  The ALJ highlights that "despite the complaints of allegedly disabling symptoms, there have been significant periods of time since the alleged onset date during which [Plaintiff] has not taken any medications for those symptoms" (Tr. 25).  The Court further notes Plaintiff reported to Dr. Benezette in October 2006 that she was unable to walk, sit, stand, or drive longer than twenty minutes (Tr. 238).  At the hearing, however, Plaintiff testified that she would sometimes drive 150 to 200 miles in a day for work, with no mention of issues related to such travel (Tr. 59).

The ALJ found Plaintiff's various reports in the record of living alone, preparing meals, bathing and dressing herself, and doing household chores including laundry, to be activities consistent with light work (Tr. 26).  At the hearing, Plaintiff testified she "very

rarely" does any chores around the home where she was staying, but next stated she did such activities at the homes she cleans (Tr. 59).

Plaintiff testified at the hearing Ms. Herman misunderstood her reports of past drug use, claiming she has not used cocaine since 1993 (Tr. 51).  The Court notes, however, Plaintiff reported to Dr. Wilson in the Halifax Medical Center Emergency Department in September 2005, she only quit using IV drugs four months prior (Tr. 395), which tends to substantiate Ms. Herman's diagnosis of Plaintiff's cocaine dependence on October 19, 2005 (Tr. 317-18).  Plaintiff's reports of marijuana use are similarly inconsistent between her statements to physicians (daily, developing a high tolerance) and her testimony at the hearing (only a few times per month) (Tr. 52, 315, 317).  Additionally, in March 2009, Plaintiff told Dr. Barber she was capable of lifting ten pounds while at the hearing, only two months prior, Plaintiff testified she was only capable of lifting three pounds, unable to "even carry a pocketbook anymore" (Tr. 46-47, 406).  Finally, the Court notes Dr. Mathis's Emergency Department report in August 2008, wherein his examination revealed a full range of motion in Plaintiff's extremities and Dr. Wilson's Emergency Department report in September 2005, wherein Plaintiff denied any paresthesias (Tr. 382, 395), are both inconsistent with Plaintiff's claims.

For these reasons, it is clear that the ALJ did not "reject" Plaintiff's pain testimony as alleged (*see* Doc. #15 at 16) and that he properly evaluated her testimony.  The undersigned finds the ALJ's conclusion, that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 25), is supported by substantial evidence.

**C.**     **Medication Side Effects**

Next, Plaintiff argues the ALJ failed to consider the side effects of Plaintiff's medications (Doc. #15 at 16).  The undersigned finds this argument to be without merit as Plaintiff does not establish the side effects of her medications were disabling.  The Court also notes Plaintiff testified she had stopped taking her prescription medications and indicated she had no desire to take medications in order to control her symptoms (*see* Tr. 37-38, 43-45, 49).

The ALJ has a basic duty to develop a full and fair record; however, the claimant bears the burden of proving disability and is responsible for producing evidence in support of his or her claim.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  The Eleventh Circuit has clarified that where a represented claimant's testimony raises a question as to the side effects of medications, but does not otherwise allege that the side effects contribute to the alleged disability, the ALJ does not err in failing to inquire further into possible side effects.  *Pilnick v. Comm'r of Soc. Sec.*, No. 07-11789, 2007 WL 3122168, at *1 (11th Cir. Oct. 26, 2007) (*citing Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985)).

In *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990), the plaintiff argued the many medications she took had severe side effects that the ALJ failed to take into consideration.  The ALJ in that case noted that the plaintiff did not complain of side effects, with the exception that she felt one of her medications might be giving her headaches, and that the record did not disclose any concerns about side effects by the doctors who examined or treated her.  *Id.*  The Eleventh Circuit found that the ALJ's determination the

side effects from the plaintiff's medication did not present a significant problem was supported by substantial evidence. *Id.* The same rationale applies to this case.

Here, Plaintiff did not satisfy her burden of establishing that the side effects of her medications were disabling. At the hearing, Plaintiff provided little testimony regarding her medications, asserting the medications had created an inability to "function" and caused kidney problems (Tr. 37). The Plaintiff testified only to side effects from past prescriptions as she stated she was not taking any pain medication at the time of the hearing and had declined to be "put ... back on more meds" at the time of her 2006 motor vehicle accident (Tr. 37-38, 43, 45).[12] Plaintiff reported to Dr. Benezette the medications Lortab, Soma, and Trazodone were helpful in managing her symptoms and denied any untoward side effects (Tr. 251, 258, 352). Although Plaintiff claims in her brief she suffered debilitating side effects, including, *inter alia*, dizziness and depression (Doc. #15 at 16-17), Plaintiff also reported to be suffering from these symptoms after she discontinued taking the medications (Tr. 405).

The ALJ noted in his decision Plaintiff's statements during the hearing that she was not taking, and refused to take, the prescribed medications, preferring to rely on marijuana instead (Tr. 23, 24, 26). The record does not reveal that any treating or examining physicians imposed limitations upon Plaintiff due to medication side effects.

---

[12] In addition, the undersigned's independent review of the record reveals that Plaintiff's treatment notes are largely silent with regards to medication side effects. Plaintiff claimed "untoward side effects" from the medications Flexeril and Robaxin in September 2004, after which Dr. Benezette started her on Soma (Tr. 260-61). At a follow-up appointment, in November 2004 Plaintiff denied any "untoward side effects" of the new medication (Tr. 258). All the while, Plaintiff remained working (*see , e.g.*, Tr. 258, "She continues to work painting and dry walling 20 hours a week. She has been working as a bartender 32 hours a week.").

Plaintiff supports her assertion of error with claims the medications were ineffective, citing record evidence the medications did not alleviate her symptoms (Doc. #15 at 17). However, this assertion is inconsistent with the overall record that reflects Plaintiff reported to Dr. Benezette the medications helped her symptoms in November 2004 (*see* Tr. 258) and with the adjustments that were made to Plaintiff's prescription medications when Plaintiff told her doctor a medication was no longer effective.  For example, in August 2004 Plaintiff reported the Flexeril was not helping her muscle spasms and the doctor changed that medication to Robaxin (Tr. 262-63).  In August 2005 Plaintiff did not complain of side effects of her medications, but reported the Soma no longer helped with her muscle spasms and she was switched to a prescription of Baclofen, while continuing the prescriptions for Lortab and Trazodone (Tr. 254-55).  In November 2005, Plaintiff complained the Baclofen did not help and requested to be put back on Soma, but did not complain of any side effects (Tr. 251-52).  In August 2006, Plaintiff complained of headaches and neck, shoulder and lower extremity pain, and said no medication had been able to help, except that smoking marijuana did relieve some headache pain (Tr. 231-32).

Other than the single incident on September 21, 2004, when Dr. Benezette's patient notes indicate Plaintiff stated the Flexeril and Robaxin did not help her symptoms and cause "untoward side effects" (Tr. 260), there is no evidence in the record Plaintiff reported her medications did cause any negative side effects.  Furthermore, there is evidence Plaintiff continued working, in both food service and construction, while on these medications under Dr. Benezette's care (Tr. 260, 262).  Plaintiff's assertion the medications were ineffective led to changes in her medications.

Plaintiff's complaints of disabling side effects do not support finding the ALJ erred on this issue. *See Pilnick, supra*, 2007 WL 3122168.   Although the ALJ did not discuss medication side effects in the body of his decision, it is implicit the ALJ considered Plaintiff's medications, and the potential side effects, when integrating a limitation on working around hazards into the first hypothetical the ALJ posed to the VE (Tr. 66-67).   Plaintiff has not claimed the alleged side effects from her prescribed medications contributed to her asserted disability.  Based on the foregoing, the undersigned finds on the facts of this case the ALJ's failure to address the side effects of Plaintiff's medications in the body of his decision does not constitute reversible error as the ALJ did not have a duty to inquire further into this matter. *See id.; also see Swindle*, 914 F.2d at 227 (finding the ALJ's determination that medication side effects did not present significant problems was supported by substantial evidence when the plaintiff did not complain of side effects with a single exception in the record).

**D.    Hypothetical Question and Past Relevant Work Finding**[13]

Finally, Plaintiff argues the ALJ's finding that Plaintiff is capable of performing light work and performing her past relevant work is not supported by substantial evidence (Doc. #15 at 18, 19).  Specifically, Plaintiff contends the ALJ erred in not including a recognized moderate limitation in concentration, persistence, or pace into his RFC or the hypothetical question posed to the VE (Doc. #15 at 18, 20).  The regulations specifically provide for the

---

[13] Because Plaintiff's contentions contained in sections IV and V surround the same issue and the Commissioner addresses Plaintiff's contentions simultaneously in one section, the Court will similarly address both issues in this section.

utilization of a vocational expert in making the determination of whether a claimant can return to past relevant work.  The regulation states in pertinent part:

> We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 404.1560(b)(2).  The ALJ is entitled to rely upon the testimony of a VE to determine if a plaintiff could return to her past relevant work.  *Savor v. Shalala*, 868 F. Supp. 1363, 1367 (M.D. Fla. 1994) (finding the vocational expert testimony provided substantial evidence to support the ALJ's ruling that the plaintiff could return to her past relevant work).

According to the Eleventh Circuit, in order for the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which encompasses all of the claimant's impairments.  *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (*per curiam*).  "Though the Psychiatric Review Technique ("PRT") and RFC evaluations are undeniably distinct, *see* 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3), nothing precludes the ALJ from considering the results of the former in his determination of the latter." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citing *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3rd Cir. 2004) ("While SSR 96-8p does state that the PRTF findings are 'not an RFC assessment' and that step four requires a 'more detailed assessment,' it does not follow that the findings on the PRTF play no role in steps four and five, and SSR 96-8p contains no such prohibition.")).

27

The Eleventh Circuit requires an ALJ to include in a hypothetical any recognized limitation on a plaintiff's ability to maintain concentration, persistence, or pace. *Richter v. Comm'r of Soc. Sec.*, 379 F. App'x 959, 961-62 (11th Cir. 2010). Simply restricting a VE's inquiry into unskilled jobs and referring to a plaintiff's moderate limitation in ability to remember, understand, and carry out detailed instructions is inadequate. *Id.* at 961.

However, when medical evidence demonstrates that the plaintiff retains the ability to perform the tasks despite deficiencies, an ALJ's hypothetical restricting the plaintiff to simple and routine tasks adequately accounts for such limitations. *Winschel*, 631 F.3d at 1180-81 ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitation in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.") (citing *Simila v. Astrue*, 573 F.3d 503, 521-22 (7th Cir. 2009); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-76 (9th Cir. 2008); *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001)). Additionally, *Winschel* recognized holdings from other circuits that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations. *Winschel*, 631 F.3d at 1180 (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 288 (6th Cir. 2009) (concluding that the ALJ's reference to a moderate limitation in maintaining "attention and concentration" sufficiently represented the claimant's limitations in concentration, persistence, and pace)); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (concluding that the hypothetical question adequately incorporated the claimant's limitations in concentration, persistence, and pace when the

ALJ instructed the vocational expert to credit fully medical testimony related to those limitations).

In a recent Eleventh Circuit case, a consultive examiner concluded that "despite a moderate degree of limitation in maintaining concentration, persistence, and pace, the plaintiff was 'able to follow simple instructions, complete simple tasks, make decisions, avoid hazards, and relate adequately to function in the workplace.'" *Jarrett v. Comm'r of Soc. Sec.*, No. 10-13911, 2011 WL 1378108, at *2 (11ᵗʰ Cir. Apr. 11, 2011). The Eleventh Circuit found that this supporting medical evidence substantiated the ALJ's hypothetical restricting the plaintiff to simple and routine tasks. *Id.* at 3. The same rationale applies to the facts of this case.

Here, the ALJ's ruling exceeded the standards enumerated above, accounting for all limitations noted in Plaintiff's Mental RFC assessment by Dr. Zelenka (Tr. 66-67, 335-37). The ALJ expressly found that Plaintiff had moderate limitations in her ability to understand, remember, and carry out detailed instructions; work in coordination with or in proximity to others *without being distracted by them*; accept instructions and respond appropriately to criticism from supervisor; get along with coworkers or peers without distracting them or exhibiting behavior extremes; and carry out simple instructions and relate minimally adequately to others in a routine work setting (Tr. 23) (emphasis added). These limitations are the same as those found by Dr. Zelenka in his PRT and Mental RFC Assessments (Tr. 331-36). Dr. Zelenka stated that "given allowances in the areas indicated (on [the Mental RFC] form), [Plaintiff] retains adequate mental ability to carry out simple instructions and relate minimally adequately to others in a routine work setting" (Tr. 337).

As such, the ALJ's hypothetical question sufficiently accounted for Plaintiff's limitations in concentration, persistence, or pace.  The posed hypothetical included, *inter alia*:

> moderate restrictions in the ability to understand, remember, and carry out detailed instructions.   Moderate restrictions in the ability to work in coordination with or proximity to others without being distracted by them. . . [h]owever, . . .this person retains adequate mental abilities to carry out simple instructions and to relate minimally adequately to others in a routine work setting. . . .

(Tr. 67).

Plaintiff vehemently argues the "ALJ included no limitations in concentration in his finding that Ms. Quick Bear is able to perform light work" (Doc. #15 at 18).  In fact, however, the specific reference to a moderate restriction in the ability to work with or in proximity to others without being distracted goes directly to Plaintiff's moderate limitation in concentration.

As previously stated, the undersigned finds the ALJ's RFC to be supported by substantial evidence.  Based on the foregoing, the undersigned finds the ALJ properly accounted for Plaintiff's moderate limitations in concentration, persistence, or pace in the hypothetical posed to the VE and was, therefore, entitled to rely on the VE's testimony as substantial evidence in support of Plaintiff's ability to perform past relevant work.

## V.  Conclusion

Based on the foregoing, the undersigned respectfully **RECOMMENDS:**

1.      The decision of the Commissioner be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

2.      The Clerk be directed to enter judgment for the Defendant and, thereafter, close the file.

30

**DONE AND ENTERED** at Jacksonville, Florida, this 8th   day of August, 2011.


Copies to:

The Hon. Marcia Morales Howard

All counsel of record

**THOMAS E. MORRIS**
United States Magistrate Judge